All rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court of the 2nd District is back in session. Pursuant to adjournment, the Honorable Susan Fagan. No comment, Mr. Chairman. There he is. Your Honor, the second case of the morning, 212-0133, Judge Mezger v. Country Mutual Insurance, et al., on behalf of the Attorney's Office, Keith Carlson, on behalf of the Appellate, Mr. Richard Turner Jr. All right, Mr. Carlson, whenever you are prepared. Good morning. Hi. Morning. We're here today on a case there's... I don't think there's a lot of actual facts in this case. I want to point out one thing, though, at the beginning. The underlying case still is pending, as I pointed out when I wrote the briefs. I just talked to Mr. Turner, who is the case management, in the underlying case, actually, this morning in DeKalb. This, you know, an accident involving a truck, a Ford truck being driven by Mr. Mezger, and there's some factual information about whether he... that he was in the scope of his employment or his job or his business at the time of the accident. We don't dispute those facts. There's some testimony from employees that he was doing a bid or going to do a bid or on the way to a bid. This vehicle, though, was insured under a policy that specifically identified this vehicle by State Farm Insurance Company, which is... Why isn't that policy in the record, the State Farm policy? I don't know why. I thought in the exhibit there was some... The deck page and the letters from the State Farm. In the... I think that's all there is. Right. The entire policy is not in the record. It probably would be better if it wasn't in the policy. I believe it was an acknowledged fact by even the trial court and opposing counsel that State Farm was providing the defense. Do we have the information on the policy limit or what the demand is in the case? I believe the policy limit is... I don't know that it's of record. I believe the policy limit is $100,000. I believe the demand is in excess for that entire policy. I believe it might have been offered that State Farm is providing for the defense of the business in the underlying lawsuit. I mean, they're paying the counsel and so forth. Let me ask you this. Do you believe there's a duty to defense it in light of the fact that everyone feels that country mutual is a secondary or an excess coverage? Correct. At most. Right. Because even the trial court said, well, I agree that you're... And even counsel argued below that he was on secondary. The judge said, well, I agree you're at most secondary. But nonetheless, they had the words. They still think you have a duty to defend and identify, which is kind of conflicting. If you're... How are you... If there's an artillery defending and you're secondary, how can you have a duty to defend? Well, the duty to defend and duty to identify are two separate things. Correct. The duty to identify in your position is that that's not right. Correct. Because you need to have a judgment prior to a duty to indemnify. Correct. Why do you say that? And what support do you have for that? Well, the support I have, I believe, the Supreme Court has said it over and over. The Alger case and the Crum and Forrester case that I cited, I agree that... And it makes logical sense because that doesn't mean that there ever is going to be a judgment to indemnify. How can we have a duty to indemnify now for something that doesn't exist? It might never exist. But it might. It might. It might, but that's why they say it's premature. Over and over again, the Supreme Court of Illinois has said it's premature. You can find that an insurance company cannot have a duty to indemnify. For example, if they have no duty to defend, the court's told they can't have a duty to indemnify because the duty to defend is broader than the duty to indemnify. So you can go that point by summary judgment, but you can't find a duty to indemnify a judgment that doesn't exist. They might never exist. What if they lose their case in the underlying case? Then you don't have to indemnify. Right, but we identify them for how much. What if there's two insurers? What if it's more than the limits, less than the limits? You have a duty to indemnify for... That's why the courts, in other cases that my opponent has cited, like the environmental cases, there was actual money that had been spent already. Damages had been... There is damage, and there is none here. And that's why... Well, what if they're going to come to an agreement that exceeds their limits? Wouldn't you want to be involved, or wouldn't your client want to be involved? Well, we would want to be involved. I mean, obviously, sometimes people do do judgments and they assign rights, and there are certain tests, you know, a guillotine-type settlement or other types of settlement, depending on the facts. We actually have counsel monitoring, separate counsel monitoring the underlying case to try to evaluate what it is worth. I mean, again, the case is still pending with discovery. I'm going with some doctors, I believe, now. I'm not directly involved in that case, so Mr. Turner is more aware of exactly what's happening. But... Assuming we get to that point, that your argument that damages and their duty to defend... or that the right to indemnity and duty to defend aren't right, we don't get to the other issue, which is whether or not the vehicle is non-owned. You can get to it on my argument if you found that it was not a non-owned vehicle. Let me just double-leg it. Then there couldn't be any potential covering no matter what happened in the underlying case. So you could enter a judgment then that was final, a ruling final, because I believe the... well, I point out, well, I believe the facts are clear to a standard beyond... or some judgment standard that it was not a non-owned vehicle. And... but I believe to the minimum there's not sufficient facts to find that it was a non-owned vehicle. Wait, in your opening brief, you suggested that it was a non-owned vehicle. Or it was not a non-owned vehicle because it was owned by McKee Masonry. Correct. And then in your reply brief, you suggest that the vehicle was non-owned, not non-owned because it was borrowed. Which is the stronger argument? Well, I think owned is still stronger because, you know, you're talking about... I think even though my point argues the intent of the... I think you still have to look at the intent. What kind of policy is this? This is not an auto policy. It's not an immoral policy, an over-and-under policy. It's a business liability policy. The non-owned auto coverage is very narrow. I think the Pekin v. Bentham case that was cited by my opponent gives a good example of what it's for. That was an employee at the job site, and they said, oh, go do this for an errand. And they go do an errand, and they're in an accident. So the employer can be held liable because they've asked them to do the errand, but it wasn't their car. They didn't have their own insurance policy on this car, but they can now be exposed to liability because they had their employee use their own car, which they don't own, and they don't, you know, hire or lease, but they just said, oh, we're missing a couple nails here. Run over to the hardware store and come back, and they're in an accident. And now they have coverage that you need, that potential gap between their own auto policy and a liability policy that a business would want to have. Scope of employment issues. Right. So that's why that sort of, I think, illustrates the nature of this kind of coverage, some very limited coverage here. Now, I don't want to mix an issue, you know, about how there's no formal agreement, but, of course, you know, normally, you know, a family, a guy that starts his own construction business and has his wife as a secretary treasurer, you wouldn't necessarily expect them to have formal leases for all their equipment and everything they did because they're just negotiating with themselves. Was this an S corporation that the family owned? I'm not certain about that. I'm not certain. I don't want to. I'm not certain if it was a regular incorporated C corp or S corp. But this, and my opponent argues that they put the name and the vehicle and the name of Brian for his credit. But that doesn't go to the intent of ownership. That goes to the intent of trying to help someone's credit, and the corporation is making payments. Even the primary vehicle had been paid for by the corporation and depreciated on the tax returns of the business. I mean, that, to me, is one of the key things here, the 100% business use identified. She testified it was only to be used for the business. In cases like the Wiki, well, it was sometimes used personally, sometimes used for business. This was their own separate personal vehicle. The corporation paid for the insurance through State Farm for the vehicle. They paid everything related to the vehicle. How could you get more than owned it? And they said that was the intent, to be used only for the business, to be owned by the vehicle. And if a business depreciates a vehicle 100%, you cannot depreciate some of your tax returns you do not own. You can't depreciate someone else's property. But they had no signage, no business signage on this vehicle, correct? I don't believe so. I don't believe they had any business signage on the vehicle. Can we go back to the issue of duty to indemnify? Your opponent, Mr. Turner, relies on recorded hit. How do you distinguish that case? Well, I think in recorded hit, you didn't have an actual – there, I don't know. Here, we don't have an actual amount of judgment. I'm trying to remember the exact facts of recorded hit here. I'm sorry I don't have them on my – In recorded hit, I don't think you didn't have – you didn't have what we don't have here. We don't have a judgment for any – We don't have an – there is a question of whether a duty to defend on a primary basis, I believe. And here, we don't have that. Here, we have an excess situation at most. And so you can find it is not premature. If there's no one defending, they have a duty to defend argument. And then usually, you don't – if there's only one carrier involved, there's not a question of it ever being secondary. Here, at the very get-go, it's acknowledged there's no real – well, there's secondary coverage. I mean, the court said you should have duty to defend. Well, recorded hit, I think, stood for the proposition that an underlying claimant should know that if there is an additional policy, it's a viable, live, you know, reliable policy. And if they're not part of the action, then how would they know that? And I think that's the plaintiff's position here. But how can that get over the Supreme Court's decisions in Trumman, Forrester, and Traveler v. Alger that said it's premature where – how can the public court, respectively, and your court overturn the Supreme Court where they find that it's always premature where there's no judgment in an underlying case? I mean, they say it over and over again in very clear language. Well, that Traveler v. Alger, that's a property damage claim. Isn't it correct? It was all property damage. Correct, Your Honor. It was over installation of – and whether it was really property damage and when it occurred and if defective or fear of future problems created property damage at the time of installation or whether they had to wait for actual damages to occur. We know we have damage.  We have injury. But we don't know – we don't have a liability. You know, they weren't contesting liability apparently in Alger. They were contesting damage. And they're saying it wasn't damage if it didn't actually break down. It was only damage if it – you know, only 5 percent of them failed or something like that. And so there's only damages then. And here we don't have any – What were the damages? What was the loss? In Alger? No, in our case. In the case before us. In our case? Yeah. Well, the damages are the bodily injury of the plaintiff if he was – you know, to the extent he's not – the defendant is liable or he's not contributory negligent or there is no liability finding yet. There's no liability or damages finding in the underlying case. There's no summary judgment or otherwise. So here there's a potential for a liability against Brian Metzker Custom and Brian McGee. And there's a potential for damages, but we don't know how many damages there would be if any. What if – That's assuming there's coverage. Assuming there's coverage. I mean, I believe for State Farm it's not contesting coverage. They're not defending under reservation of rights, I understand. But they're defending the case still and they haven't actually paid their limit. What was the loss to Trisha McKee, the independent administrator of the estate? What happened to Brian? What happened to Brian? Well, Brian died in an accident. Correct. So you have a State Farm policy of $100,000, correct? Right. They had bought – the corporation had bought a policy for this vehicle, identified this vehicle, and the vehicle was being used at the time of the accident. And there was no question that it was with permission or any other issues. So they had a policy to protect and insure the vehicle that is defending the lawsuit filed against the operator of the vehicle who is represented by the estate now. Right. So the damages occurred, the loss occurred at the time of the incident. Yes. All the fixed is of that time is correct. And I – if I could ask you a question about the home or borrow. I mean, because I sort of addressed the borrow issue because in the response, my opponent was suggesting that this vehicle was just meant to be used by – kept by Brian and only used in the business, but then really sort of returned to him. So if it's to be returned to him, then it's borrowed. If it's – but I believe all the – so I'm saying, okay, if you don't believe my argument and believe his, then that means it's borrowed. That means one or the other. Under the common understanding of the term. Under the common – right, which we have to look at in new terms. And they're defined. Other courts look at dictionary definitions for the word borrow. And the courts frequently do that here. I mean, it's – I believe it's trying to be clear to address any vehicle that is going to be used on a long-term basis. It should have its own separate policy that insures it. And here it did have its own separate policy. You know, that's why they use own, borrow, lease, use. But there's an exception for – like the Pekin v. Goldman case, where, like, they had an employee and they're going to have vicarious or employer-responding superior liability because of the use of an employee's vehicle, creating liability for them. And with every – and, again, it's like the case that's shown. The title doesn't control. Here is the intent. And it's not like in the wiki where they said that we didn't mean to make a gift to the corporation. Here, Patricia said we've always intended this vehicle to be used for the business. And it was only used for the business. And it was depreciated by the business. So it wouldn't be – and it was paid for by the business. So it wouldn't be a gift. When they have the trade-in, the monies from the trade-in in the title of the old car, named the husband and wife, those monies were used to purchase this new vehicle, correct? Yeah, but as you testified, the corporation had made the payments on the prior truck. So that was a truck that had already been – and actually, there was a tax return on – I think it was part of the exhibit, but there was a prior tax return showing they also depreciated that vehicle as well on the corporation's tax return. So it was all that corporation's vehicle, just that only the title, allegedly to improve Brian's credit rating. But all the other indices of ownership are present, I believe, here, which is the intent and the policy. And certainly, if that wasn't sufficient, I believe the only other possibility is that it was borrowed, if you accept my opponent's argument, and then the same results. We'll have an opportunity for rebuttal. Thank you. All right. Please, the Court. Mr. Carlson, I want to return – or we'll start with the point that Justice Borchetta brought up, and that is that we don't have the State Farm Policy here. In the reply brief, Country Mutual argues that Vetter applies. And in Vetter, they compared the two policies. The Supreme Court looked at a State Farm Policy available there and another commercial policy that was available, and said, well, in the underlying policy on that automobile, it says, we will cover any and all entities that might become liable, not just the driver, not just Vetter, not just Terp, but anybody else. And then there was language in there in terms of how that coverage would be specifically applied. And State Farm in that policy said, we'll be primary. And in the commercial policy in that case, the commercial policy in Vetter said that we'll be the excess. We'll look at any other person or organization with respect to his or its liability because of acts or omissions of Vetter. So the Supreme Court in Vetter specifically said, and in paragraph 17 of the decision specifically stated this, because of the terms of the two policies, Standard Mutual – I said State Farm – and Standard Mutual provide a primary coverage and continental only excess. The Supreme Court specifically stated we're comparing language. The State Farm Policy isn't here. But do we even get to that point, Mr. Turner, unless and until, as your opponent states, the duty to indemnify becomes right? Right. And, Your Honor, I think that's – you know, we're kind of getting – we're confusing principles here. Excess – primary excess coverage with duty to defend, duty to indemnify. They're two separate things. They're two separate things. And along those lines, both Travelers v. Elger and Crum and Forrester v. Resolution Trust are easily distinguishable. Travelers, the court looked to, well, when the sprinkler system is installed, is that the occurrence because it's a defective sprinkler system? Or is the occurrence later when it fails and the sprinkler system activates and causes property damage? And what the court said there – and, you know, it's limited to the application of the property damage facts in that case. There is no property damage when the installation of the system takes place. The property damage, the quote-unquote occurrence, can only take place when the system malfunctions and there's water damage creating property damage. In Crum and Forrester, what the court says, well, this real estate agent, there's really no duty under the contractual language of the policy to defend her. We don't think she falls within the rubric of the type of professional activity here that this policy would protect. Therefore, there's no duty to defend. And therefore, there can be no duty to indemnify. So your position is the occurrence, quote-unquote occurrence in this case is at the point of the accident. Not my position, Your Honor, but the Illinois Supreme Court's position and in Lackton is probably the most – the case that's most on point, and that's Central Illinois Light. Well, Central Illinois Light requires that damages be fixed before the duty to indemnify arises, correct? Well, I think, Your Honor, what they're saying there – I'm looking more at how the court interpreted it. Well, it's legally obligated to pay. I have. There was money being paid. Right, right. And that – the language is fixed. Damages have to be fixed in a personal injury case such as this. Damages are fixed when a judgment is rendered or there's an agreement. But Recordahit doesn't say that. Recordahit says that the interest – Recordahit is a standing issue as to whether or not you can bring a lawsuit to determine coverage. That's not the issue. The issue is whether or not there's a duty to indemnify. Well, Your Honor, respectfully, I think what – I disagree. I think what the Illinois Supreme Court said, neither of the definitions, the definitions of legally obligated, neither of those require the need for an adjudication or the filing of a lawsuit as a precondition of the obligation. And it also goes on to define damages. I think if you look at Central Illinois Light, what the Illinois Supreme Court says, even though there may have been – I'm not disagreeing with what you just said, but I think there's a distinction between determining coverage, et cetera, as opposed to when does the duty to indemnify kick in. Well, I don't think the court in Central Illinois Light said that there must be a personal injury judgment or settlement in order for the duty to indemnify. Well, that was an environmental case, correct? It was an environmental case, and my home points that out. And there's no issue of coverage. Right. But what I'm looking at, Your Honor, is how they define legally obligated, because that's the operative term in this policy. In our policy, in Section 2A1, defining business liability coverage, it says that country mutual contracts with key custom masonry, to pay those sums that the insurer becomes legally obligated to pay as damages because of bodily injury to which this insurance applies. And my position is that Central Illinois Light, the Illinois Supreme Court, says you don't have to even file a suit. It wouldn't even be necessary for my client, for Mr. Metzger, to file a suit against the corporation in order to trigger the duty to defend or duty to indemnify. You did agree below that any coverage under country mutual policy would be secondary or excess, correct? Well, I made that statement, Your Honor, but, you know, that's a statement, and I think Judge Klein made the same statement. That's a statement that we make in terms of when we're looking for coverage in these situations. You know, there's a primary policy that files the truck, and, you know, there's a legal term, excess coverage, and there's the term that's commonly used in the personal injury bar, which is excess coverage available from another source. So I don't think simply because I made that statement or Judge Klein made that statement we meant to imply that we have to exhaust or that we have to prove through a damages verdict or through a settlement. We have to have that in place before the coverage on the business liability kicks in. Well, it wouldn't kick in until the primary coverage is exhausted, is that correct? Correct, but to take the position as country mutual, our policy, we shouldn't even have to come in to defend here. I take issue with that. I don't think it's necessary that we have to reduce our claim pending in the underlying action to either a judgment or a settlement before country mutual becomes obligated to defend and or indemnify. That's the whole issue here. Why do they need to defend? Well, they have a defense available, as counsel said, from State Farm. So, you know, as is custom here, most of the times the excess carrier will tag somebody along, and that's what's happening here. Well, that's occurred because of Judge Klein's ruling, though, and that's also one of the issues here. Was it a non-owned vehicle under the terms of the policy? Right. How do you respond to counsel's argument that your response brief tends to suggest that the vehicle was borrowed? Well, I don't suggest that it's borrowed. What I'm saying is that this truck was used exclusively by Brian McKee, and Justice Shostak was correct. There was no signage on the vehicle, but this is a small operator. It's basically a single employee type corporation. He hired other employees that would use their own vehicles. If the truck was, quote-unquote, borrowed by the corporation, then it would have been used exclusively for corporate business. And although she testifies in her deposition that she had the other two vehicles for personal use, and she testifies that he saw horses and everything else were in that truck, this was a truck he used every day. Whether he's going to bid a job, whether he's plowing snow, which he also did through his business, or whether he's going out and actually doing masonry business, there's no evidence that any other employee of the corporation used that truck. He was using it for corporate business exclusively. He was using it for corporate business. The only evidence we have is exclusively. But like Gallipi, in that case, Mr. Gallipi said he specifically stated that he wanted to give the truck or wanted to have the truck contributed with the van or loan the van to the corporation. He specifically stated that. And the court in Gallipi said, well, that's really not important. When we're talking about intent and ownership, what we're talking about is, did the owner of the vehicle intend that the corporation become titled or assume ownership of the vehicle? In that case, a van, in our case, a truck. It's crystal clear that Mr. McKee, who, of course, wasn't able to testify, but certainly from his wife's testimony in her deposition, they wanted that truck titled in his name only. And regardless of the reason, whether it was because of his credit rating or what, they wanted that title kept in his name individually. And it was kept in. And that's what's different from the cases cited by Country Mutual. In each of those cases that were cited, there was some evidence of an intent to transfer title. In one or two of the cases, it was just things didn't get done in time before somebody died, but there was evidence that there was a signature to the title that wasn't turned in and that type of thing. There's no evidence here that at any point in time either Brian McKee or his wife ever wanted to take the title for that vehicle, the ownership of that vehicle, and put it in the corporation. What Country Mutual could have done here, and it is in other policies, if they wanted to exclude that truck, where they defined non-loan autos, they could say including vehicles used by officers regularly in the course of business. They didn't do that. They defined in the policy, they defined Brian McKee as someone who would be covered for his acts on behalf of the corporation as an agent, including this motor vehicle collision. Non-owned vehicles is what they called it. But non-owned vehicles, they could have included in that non-owned vehicle definition, not only vehicles borrowed or leased or whatever, but vehicles regularly used by corporate officers to do business. Mr. Turner, how are we supposed to construe insurance policies? How is the course of support? Well, that's my final argument. If there's any lack of clarity, if there's any confusion, and I cite the cases, there's several others, Johnson v. Davis, State Farm Model v. Kingsport, Claire and American Insurance. If there's confusion in the policy, then it's to be construed against the insurance company itself. And the courts have uniformly said if there's confusion, then side on the side of coverage as opposed to no coverage. Did you ever object to the introduction of the State Farm Policy? The State Farm Policy was never raised, and I didn't see any need to bring the State Farm Policy in. Country Mutual never brought it in for consideration before the trial court so that the policies could be compared if we were going to do a better type analysis. And whose burden is it to make the record here at the appellate court? Well, it would have been the appellate's burden. Thank you. Your Honor, just briefly about the State Farm Policy. I mean, below, we were sued by Mr. Turing's client, which referenced the underlying case and the State Farm, and which became part of the record in Mr. McKee's deposition about the State Farm Policy, in which the letters and the certification page are part of the record of the State Farm Policy and the acknowledgment that it was provided in the primary defense. And then all through the briefs that was acknowledged, and it was acknowledged at the oral argument and by the court and by opponent and everywhere, at each stage of the proceedings. But we have the actual, we have a Country Mutual policy, the full policy in the record, which doesn't identify this vehicle anywhere in the policy itself. And it says for basically it has a provision for any other vehicle not owned. It has an excess clause. So where it's not identified, it's excess anyway by its own terms, and it's not disputed. But here the more, I think the important point is, regardless of whether, if the court agrees with my position on whether it's a non-owned vehicle or not, it doesn't really matter whether it's secondary or even whether it could be a duty to defend or identify or not. Counsel talks about Brian McGee using the vehicle. Brian McGee used the vehicle as McGee Custom Masonry exclusively. That's who owned the vehicle. It's not a situation where Mr. Glucki used it for personal use some of the time and the corporation used it some of the time. That's one of the factors that was in that case. That vehicle also was titled in Glucki's name, but the court didn't say, okay, title, that's in the story for ownership. They went on to all these other factors. If title was the question, only question, then you wouldn't need Glucki. You'd have to go on to those other factors. That's why the courts say title does not control here. The title is because title does not indicate ownership. Things I think more, I think, really challenge here are things where you admit exclusively used for the business, 100% used for the business, intended to be used for the business, and we have our own personal car that we use to go to the grocery store and take the kids to school or whatever. Can you have a duty to indemnify but not a duty to defense? Yes, you can because you could be an excess carrier. You could have a duty to indemnify for a judgment of $500,000 and your found coverage, and you could have a duty to indemnify for that. For example, what they'd have to do, normally if there was no dispute over coverage, it would just be paid. If there was a dispute, they would get a judgment for $500,000. They would garnish the policy. But your position is you can't have a duty to indemnify until and unless you have a judgment. Right. Identify what? Even though you have an occurrence. Identify what? Pay $200,000? Pay $300,000? How can we? There's nothing to pay. Well, that would come up at a later time. I mean, you could still. Then we have a duty to defend. You're saying duty to identify in the future as opposed to present. Correct. I know you've discussed this in your brief, but respond to counsel's argument concerning the language of the policy, that you could have, Country of Mutual, could have included an exclusion of officers. I understand. I understand all the time because, you know, we have situations where the English language is very broad and many words mean different things, the same thing, and there's many different factual patterns, and that's the argument I run into all the time is that you could have done this different or more specific or broader. I think they intended to do it very broad. That's why they could have – like, what the argument could have been, well, why didn't you say the vehicle title of the name of somebody was one or the other? I thought they tried to be very broad by using all the normal terms, you know, own, borrow, lease, hire. They didn't just use one of those terms. And then, you know, an argument is, well, it's technically not owned by him because the title's in somebody's name. Well, why is the courts – the courts don't – have already repeatedly said that just mere title doesn't determine ownership. They look at all other factors. What was the intent to be more important here? And the intent is uncontradicted for this vehicle to be owned by McKee Customs and Machinery, and that's why they depreciated 100 percent as a business asset. You can only depreciate – and she agreed that was correct to do it that way. You can't depreciate someone else's property on your own tax return. Otherwise, you – well, if you could, you paid a lot less taxes. I'm going to ask a question, a question again that you didn't have the opportunity to answer, a question. You had indicated that you couldn't have a duty to indemnify without a duty to defend, correct? If there was a judgment that was for a covered loss. How about if there was – doesn't the insurance contract vest at the time of the occurrence? Well, the courts say the rights – That will record a hit set? Well, that was, again, as Judge Spock pointed out, a standing issue. You can't, like – the rights vest, you can't, like the insurer and the – the insurer can't change the terms of the policy to preclude coverage for the claimant. Their rights are vested. They couldn't, like, agree we'll rescind the policy, and there's no coverage, and therefore you're out of luck. Their rights are vested, then. So their rights are vested, but that's a different – that's a different doctrine from prematurity. Prematurity, that doesn't mean that their rights haven't vested, but it's premature now, and it might never be, but they do have rights under our policy, potentially. That's a good point. That's a good point. If there is coverage. But that doesn't – that doesn't say that the duty to indemnify has not occurred. It's just that we don't know the amount that needs to be indemnified. So you're saying it's not right. I say it's not right and premature. I guess that's a different – you know, your thought. I think it's sort of arguing that there's a duty to indemnify in the future, which if two things happen, there's a judgment, and it's a judgment in excess of the underlying limits. Okay. So two more steps would have to be done if – and if, of course, the court had found that there was coverage for that particular loss under the policy. And here in – I understand that. Here in the WICA, of course, I point out that the – whether it was a non-native was a different consequence than in our case, but there's some analogies in the case. But there they had many different factors from whether they intended to give a gift or not, the personal use, the payment by the insurance at the beginning for the vehicle, the – all very different from ours, not things like the depreciation of the 100% business use. I don't know how you could get – the only thing left, they argued, is title. That's the only thing that they argued here. And again, the title issue was only because of – for a different purpose than showing ownership was to help an individual's credit rating, not for ownership purposes or borrowing purposes. And again, if it's just – again, if it is to be owned by him and title is controlling, then the corporation is borrowing the vehicle under the definitions of the case law and is going to return it to the true owner, Mr. McGee, after it's used in its corporate purposes. So that's – for those reasons, again, I expect to request that the judgment of the Cal County be reversed and the judgment of the profession be dropped. Thank you. Thank you. All right. Thank you, gentlemen, for your argument this morning. We will stand in recess for our next case.